Taliaeekho, J.
The heirs of John Nixon, averring themselves to be the legal owners of a large tract of land lying between the Lakes Pontchartrain and Maurepas, hounded on the north by the Manchac Pass, and south by a bayou called Bayou Sueur, complain that the defendant has disturbed their possession of it, by entering upon the land and committing, and causing by employees to be committed waste, by cutting on, and removing therefrom valuable timber and wood, to their injury aad damage,which they estimate at one thousand dollars.
They took out an injunction to restrain the defendant from further *516 alleged depredation, and pray that they have judgment against him, decreeing them to be the true and lawful owners of the body of land embraced by the boundaries specified, that the injunction be perpetuated, and that they have judgment beside for one thousand dollars, as damages for the trespass complained of.
The defendant answered by a general denial, and, in a supplemental answer, avers ownership, by purchase from the State of Louisiana of about five hundred acres of land, specifying the seelions, townships, and the ranges in which his lands lie. He denies that plaintiff's have any legal right to the said land, or any part of it, and prays judgment in his favor, and for all costs, damages, etc., caused by the plaintiffs’ proceedings against him.
The plaintiffs present, as the origin of their title, a grant of ten thous- and one hundred and twenty arpents of land by the French Government to Miss Mary Rillieux, on the 16th of July, 1764, deseribed as “lyingon Lake Pontchartrain, and extending from the river of Sueur to Manchac or river of Iberville, (not including the lot of ground of the new village, of the Choctaw Indians) running north and south, and bounded on the south, by the said creek of Sueur, on the north by Manchac, and on the west by a cypress swamp. ”
They show a chain of title from the original grantee. It appears that the grant was surveyed in the month of September, of the year following 1765, by Don Carlos Trudeau, Surveyor General of the Province of Louisiana, whose original jnlat and proces-verbal of the survey is in evidence in this case. By this plat the land granted has, for its boundaries, Lake Ponchartrain on the east, the Manchac Pass on the north, and Lake Maurepas on the west. Its southern boundary is formed partly by the creek or bayou Sueur, and partly by a line running from a point on that bayou, due north, to Lake Maurepas.
The plaintiffs contend that they are entitled to all the land within these specified boundaries, without regard to the quantity they embrace, and pray for a judgment accordingly. The controversy has grown out of the uncertainty which seems to exist as to the locality or identity of the bayou Sueur, named in the grant and marked on the plat of Trudeau. A bayou ■which it seems is now generally called bayou “ Deseret,” the plaintiffs insist is the “ Ravina de Sueur ” of the ancient surveyor. Between this bayou Deseret and the Manchac Pass, there are several bayous making into Lake Pontchartrain. A number of witnesses were examined as to the locality of the bayou Sueur. But their testimony is contradictory and quite unsatisfactory. The plaintiffs’ witnesses speak of the bayou Deseret, as having been formerly known as bayou Sueur, while those of' the defendant refer to a bayou several miles north of Deseret, as having been known as bayou Sueur. The Judge a quo, deeming the plaintiffs to have failed in establishing the identity of the bayou forming the southern boundary of the grant, dissolved 'the injunction, and dismissed the suit at plaintiffs’ costs.
•The plaintiffs have appealed.
On the trial in the court below, a surveyor general and two deputy surveyors as witnesses, were examined at great length. Numerous maps, plats and diagrams were introduced. ■ The deputy surveyor had. been *517 employed in making surveys upon the lands claimed to be within the boundaries of the grant, as well as upon the contiguous territory. They appear to have been familiar with the topography of the district of country, lying between the lakes and south of the Manchac Pass. One of them had surveyed the township within which the grant lies, and made a location of the grant itself. Their testimony, as to the locality of the bayou Sueur, conflicts as much as that of the other witnesses. Important facts on other points in the controversy are stated by them; but they fail to remove the obscurity with which the real bayou Suer is enveloped. stat nominis umbra.
The view we are inclined to take of this case will relieve us of the labor of scanning the mass of conflicting evidence adduced, and enable us to reach a solution of the questions involved by an easier process.
The plaintiffs show the original grant to Mary Billieux, the survey of the grant by Trndeau, and the action of the United States Commissioners upon it after the cession of Louisiana to the United States. But it was not until May, 1858, that there was any confirmation of this claim by the government of the United States, and then it was confirmed for a much smaller quantity of land than that surveyed by Trudeau. The plaintiffs’ counsel contend, that there being a grant per aversionem, it is perfect, the extent of the concession being patent by clearly defined boundaries. That having this character of distinctness, no confirmation by the United States was necessary.
We concede that this Court has frequently recognized the doctrine, that a peifect grant importing a clear divestiture of title from the former sovereign, and transfer of that title to the grantee, requires no act of the new sovereign to give it completeness. But we think it equally clear, that where there are conditions imposed upon the grantee, and they have not been complied with, or from any other cause, title to the lands granted has not passed from the former government prior to the cession of the Province of Louisiana to the United States, the case is quite different. Eor, in the last instance, the title to the lands granted passed to the United States as-public domain, and it rests with Congress exclusively to dispose of claims standing on this basis.
Erom the final action of Congress upon the claim of the plaintiffs, and that action so long delayed, we infer that the title to the land granted to Mary Billieux in 1764, was inchoate, and incomplete at the time of the transfer of the province of Louisiana to this government. Before the act of Congress, of May 24th, 1858, the courts of this State could not have been invoked to decree a full and perfect title in plaintiffs to this large concession to Mary Billieux, and a fortiori they cannot now be required to do it, especially since by that act the grant has been so largely shorn of its proportions.
Assuming that we have to deal with the plaintiffs’ rights to the land in question, as we find them established by the final action of Congress in May, 1858, we shall proceed to inquire into the relative location of the lands of the contesting parties; for, upon the question of the confliction, if any, of the boundaries of these lands; lies the gist of their controversy.
We find, then, that an order was issued on the 22d of November, 1858, *518 by Wm. J. McCulloch, Surveyor General of the State of Louisiana, directed to Theodore Gillespie, a Deputy United States Surveyor, and which is in these words: “You will survey the claim of M. E. and R. Malines, O. B., 383, in conformity with its confirmation, and with the French grant upon which it is founded, and also the part of this claim which has been confirmed to the legal representatitives of Maria Malines by the act of 24th of May, 1858. Copy enclosed. John Claiborne, Esq., of New Orleans, may afford you information with regard to the latter, as it is understood he preferred the claim to Congress.”
Under this order, the deputy surveyor located the Mary Rillieux or Mary Malines grant, commencing his work at the junction of the Manchac Pass, with Lake Pontchartrain, the only certain point in Trudeau’s survey that can now bo found, and extending the front on Lake Ponchartrain southwardly to a bayou, which he marks “ Bayou Sueur ” on his plat of survey. Then he forms the southern boundary in part by the bayou, and in part by a line run from a point on that bayou to Lake Maurepas, conforming in shape with the survey of Trudeau, and embracing the same quantity of land, viz: 10,120 arpents. This survey covers large portions of township No. 9, range No. 8, and of township No. 9, range No. 9. From this entire survey, the part of it confirmed by act of Congress of May 24th, 1858, is laid off in tho northeast part of the survey, and is bounded by the Manchac Pass, Lake Ponchartrain and the range line between ranges 8 and 9, extending from the lake to the pass. No part of the lands claimed by the defendant lies within this survey. His land lies in section No. 34, of township No. 9, range 8, east, and in section No. 4, of township No. 10, of the same range. The southern boundary of the “Melines” survey at no point, approaches the nearest part of the defendant’s land by a distance less than half a mile. That part of tho survey, sot apart to the legal representatives of Mary Malines, under whom plaintiffs hold, lies at a still greater distance. Gillespie’s survey received the approval of the surveyor general who issued the order.
For the reasons stated by the District Judge for the judgment of the court below, and the additional grounds expressed in this opinion, we think the plaintiffs have failed to make out their case.
It is therefore ordered, adjudged and decreed that the judgment of the District Court be affirmed, with costs in both courts.
Rehearing refused.